IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARK JEROME ROSE,

      Plaintiff,

v.                                                        CV 13-1015 MV/WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Mark Rose applied for supplemental security income on May 26, 2010, based on a congenital spinal defect. (Administrative Record "AR" 50.) After his application was denied at all administrative levels, he brought this proceeding for judicial review. The case is before me now on Rose's Motion to Reverse and Remand for Rehearing, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Rose's reply. (Docs. 15-17.) For the reasons explained below, I recommend that the Court grant Rose's motion and remand this case to the SSA for proceedings consistent with this Proposed Findings and Recommended Disposition ("PFRD").

STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008)

(citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 416.920. If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 416.920(e). At the fourth step, the ALJ compares the claimant's RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See* 20 C.F.R. § 416.920(f). If a claimant is not prevented from performing his past work, then he is not

disabled. *Id.* The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Rose is a fifty-seven-year-old man with a high school diploma and approximately two years of community college. (AR 45, 51.) He worked as a tire installer from 1974-1998, as a carpet-layer from 1998-1999, as a private yard-worker from 2002-2003, and as a general laborer from 2005-2010. (AR 51.) Rose claims disability beginning on January 1, 2009.[1] (AR 100.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Rose has a history of hospitalizations resulting from seizures, possibly related to alcohol withdrawal. (AR 171-75, 211-13, 229.) Most relevantly, Rose was admitted to the University of New Mexico Hospital ("UNMH") on April 6, 2011, after falling down stairs the day before and suffering a seizure. (AR 211-13.) Rose was hospitalized through at least April 11, 2011, and had several advanced examinations, including an electroencephalogram, a head/brain CT scan, and a

---

[1] Rose originally claimed disability beginning on August 1, 2005, but amended that date based on substantial gainful employment between 2005 and 2009. (AR 96, 100.) The ALJ determined that Rose did not have substantial gainful employment after May 26, 2010. (AR 26.)

ventilation perfusion scan. (AR 250, 261, 264.) The record does not contain ultimate diagnoses or discharge papers.

### HEARING TESTIMONY

At the hearing on January 27, 2012, the ALJ questioned Rose, who was not represented by an attorney or other representative. (AR 38-48.) Rose testified that his hearing was bad after his April 2011 seizure and asked the ALJ to repeat herself multiple times. (AR 38.) Rose testified that he has a birth defect in his lower back that causes numbness in his legs and that a doctor told him about ten years ago that he should not lift anything over fifteen pounds. (AR 40-41.) The ALJ informed Rose that those are the kinds of records needed to evaluate his case. (AR 41.) Rose further stated that his April 2011 hospitalization lasted for approximately two and a half months because he had seizures at the hospital. (AR 47-48.) Rose said that he has seizures occasionally, but ran out of his medication. (AR 48.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on June 26, 2012. (AR 21.) The ALJ determined that Rose suffers from the severe impairments of a seizure disorder and degenerative disc disease of the lumbar spine and the nonsevere impairments of poor eyesight and hammer toes. (AR 26.) The ALJ assessed Rose's RFC as that for light work, except that he can lift and carry no more than twenty pounds occasionally or ten pounds frequently; stand or walk for a total of six hours in an eight-hour workday; sit for six hours in an eight-hour workday; engage in unlimited pushing and pulling, except as otherwise shown for lifting and carrying; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; and occasionally reach overhead with his left arm. (AR 27.) The ALJ noted Rose's April 2011 hospitalization, including the CT scan, but found that the medical evidence did not support

his allegations of disabling symptoms and limitations. The ALJ ultimately determined that Rose could perform work as a laundry folder, electronics assembler, or shipping and receiving weigher, which are all light, unskilled vocations. (AR 30-31.) On that basis, the ALJ found that Rose was not disabled.

## DISCUSSION

Rose argues that the ALJ erred at steps four and five. Rose contends that the ALJ erred at step four by failing to develop the record or order consultative evaluations with regard to Rose's alleged hearing impairment, failing to order complete records from UNMH, and failing to support the RFC with substantial evidence. Rose argues that the ALJ erred at step five by improperly relying on the VE's answers, rendering the ALJ's conclusion at step five unsupported by substantial evidence.

With regard to Rose's alleged hearing impairment, the claimant bears the burden of proving that he is disabled.[2] *Maes*, 522 F.3d at 1096. However, because administrative hearings are non-adversarial, the ALJ is responsible for developing an adequate record on the issues raised. *Id.* This duty is "heightened" when the claimant is not represented by an attorney. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). To trigger the duty of inquiry, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins*, 113 F.3d at 1167 (citations omitted). While "[t]he duty of inquiry takes on special urgency when the claimant has little education and is unrepresented by counsel," *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987), the ALJ is

---

[2] Rose also alleged a congenital spinal defect at the hearing, claiming that he is missing a bone in his back. (AR 40.) However, this allegation is addressed by x-rays in the record, showing that Rose instead has severe spondylolisthesis at L5-S1, with a very vertically oriented L5-S1 disc space. (AR 194.) Because this contention is addressed in the record and is therefore without merit, I do not address it here.

not required to "exhaust every potential line of questioning," *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).

In cases where the claimant argues that he should have been afforded a consultative examination, "'[t]he ALJ should order a consultative exam when evidence in the record establishes a *reasonable possibility* of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Madrid*, 447 F.3d at 791 (quoting *Hawkins*, 113 F.3d at 1169) (emphasis in original).

Rose argues that he raised the issue of a hearing impairment at the SSA hearing with sufficient specificity to trigger the ALJ's duty of inquiry and that the ALJ should have ordered a consultative examination. The Commissioner counters that Rose's claim on the hearing impairment is without merit, citing no authority for the proposition that, "[i]f the evidence received is consistent and sufficient to decide whether the claimant is disabled, the [SSA] will make its determination based on that evidence." (Doc. 16 at 5.) The ALJ noted during the hearing that Rose's hearing was bad and that he was not wearing a hearing aid. (AR 38.) Rose repeatedly asked the ALJ to repeat herself during the hearing and indicated that his hearing had declined after the April 2011 seizure. (*Id.*) The ALJ did not follow up on this issue at all. However, the ALJ was sufficiently on notice at the hearing that Rose suffered an additional, and unaccounted for, impairment.

I agree with Rose that he adequately raised the issue of a hearing impairment at the hearing. Because Rose was unrepresented by counsel and raised the issue of a hearing impairment with sufficient specificity to put the ALJ on notice of the claim, the ALJ had a duty to develop the record and order a consultative evaluation. *Hawkins*, 113 F.3d at 1169; *Dixon*, 811

F.2d at 510. The ALJ's failure to order a consultative examination on this point constitutes reversible error.

Rose also argues that the ALJ failed to develop the record with regard to his seizure disorder and other impairments by failing to order complete medical records from his April 2011 hospitalization. The Commissioner responds that Rose did not indicate what additional evidence would have been gained from ordering the complete records and therefore failed to trigger the ALJ's duty to develop the record. Rose replies that the recently obtained records show that he was hospitalized for almost two months, suffered from confusion and other mental deficits, and required significant occupational therapy.[3] Rose argues that the records are "critical" to understanding his conditions. (Doc. 17 at 3.)

In cases where the claimant argues that there was evidence already in existence that the ALJ failed to uncover or procure, the claimant must "prove prejudice by establishing that the missing evidence would have been important in resolving the claim before finding reversible error." *Hawkins*, 113 F.3d at 1169 (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

Rose and the Commissioner cite to *Madrid* in arguing this point. 447 F.3d 788. In *Madrid*, the Tenth Circuit found reversible error when the claimant had been referred for a rheumatoid factor test, the record did not include the results of such a test, and the ALJ ruled out the possibility of a rheumatologic disorder based on lack of evidence. *Id.* at 790-92. Rose contends that *Madrid* supports his position that the ALJ had a duty to order the records from UNMH that she knew were in existence and to which Rose specifically referenced at the hearing. The Commissioner counters that, unlike *Madrid*, there is no contention here that Rose received medical treatment, such as a rheumatoid factor test, entirely unaccounted for in the record. The

---

[3] Rose attached some of these records to his reply. (Doc. 17 Ex. 1.)

7

Commissioner further contends that the "ALJ had no basis for concluding that the hospital had forwarded incomplete records." (Doc. 16 at 6.)

Rose specifically stated that he was hospitalized for approximately two and a half months (AR 47-48), yet the AR contains only five days of those records. Particularly telling in this case is that Rose was admitted to the hospital after having a seizure, was kept for several days, and the record shows nothing about discharge proceedings or improvement in Rose's condition that would warrant discharge. The ALJ had a clear basis for concluding that the hospital had forwarded incomplete records.

However, the fact that the ALJ should have concluded that the records were incomplete is not dispositive in this case. Rather, Rose bears the burden of demonstrating that the missing records would have been important in resolving the case. *Hawkins*, 113 F.3d at 1169. Rose attached some of the records to his reply and pointed out relevant areas, including a note from an occupational therapist that Rose may require full-time supervision due to cognitive deficits. (Doc. 17 Ex. 1 at 5.) This fact, in addition to the length of Rose's hospitalization, demonstrates that these records would have been important in resolving this case. Therefore, the ALJ's failure to order the complete records from UNMH constitutes reversible error. *Hawkins*, 113 F.3d at 1169.

Because I find reversible error in the ALJ's failure to develop the record, I do not address whether the RFC was supported by substantial evidence or any claim of error at step five.

## CONCLUSION

I recommend that the Court find that the ALJ committed legal error at the RFC stage by failing to develop the record in the ways discussed in this PFRD. I recommend that the Court

remand this case for proceedings consistent with this PFRD and direct the ALJ to order complete records from UNMH and order a consultative evaluation for Rose's alleged hearing impairment.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.